ALFRED THACKSTON, PETITIONER-DEFENDANT, v. THE LANSDELL COMPANY, RESPONDENT-PROSECUTOR.

Submitted May 7, 1946—Decided October 9, 1946.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the respondent-prosecutor, *Schneider & Schneider* (*Walter X. Trumbull,* of counsel).

For the petitioner-defendant, *Winne & Banta* (*John A. Christie,* of counsel).

The opinion of the court was delivered by

COLIE, J.   This an appeal from an award of the Workmen's Compensation Bureau in favor of the employee.   There was no appeal to the Court of Common Pleas because the alleged accident happened outside of New Jersey.

On April 23d, 1943, Alfred Thackston was spreading a heavy tar in a parking area which was covered by a wire screen for the purpose of camouflage.   The tar was applied at high temperature and gave off a considerable quantity of smoke and fumes.   At the end of the working day, Thackston's eyes smarted and burned.   Five days later he went to

a doctor recommended by his employer, who treated him for about ten days when, because his condition did not improve, the employer sent him to a Dr. Berke. Dr. Berke's testimony was that Thackston had conjunctivitis of the right eye and could distinguish hand movements at a distance of six inches. He attributed the impaired vision "to an inflammation on the inside of the eye" known as choroiditis and uveitis. X-rays were taken to discover whether any foreign body was imbedded in the eye but none was discovered. Blood tests, a urinalysis and other tests were given, all of which were negative. However, one tooth was found with a root abscess. The tooth was removed and a culture of the pus disclosed a streptococcus viridans infection. Dr. Berke said, "all our examinations were normal, and we failed to find any cause for the inflammation in his eye." In answer to hypothetical questions, his answers were varied. He said in one instance that he could not say positively that the conjunctivitis was the cause but that it could be the cause. In another instance he said that he believed the creosote fumes precipitated the inflammation of the eye which resulted in blindness. Enlarging upon the last statement he said: "We made all these tests which I mentioned and which are known to produce a disease such as he had. We found all our tests were normal and that he did not have any of the usual diseases to which this condition is attributable."

Dr. Dias, called on behalf of the employer, agreed that the cause of the blindness was uveitis and was firmly of the opinion that the inflammation caused by the creosote fumes from the spreading of tar at high temperature bore no relation to the blindness. He also went further and explained that one of the recognized forms of treatment was to induce a conjunctivitis in the hope that the increased blood supply caused thereby would cure the condition. His testimony was to the effect that a uveitis is always due to a constitutional cause. When asked what relationship the streptococcus viridans would have, he said that "the absorption of pus over a prolonged period of time would produce a posterior uveitis."

In awarding compensation, the deputy commissioner seems to have come to a decision without regard to the medical testi-

mony for he said: "The main controversy in this matter as presented to me seems to be medical, and I suppose if we handled this case from the medical angle we never could get a decision. * * * we don't try compensation cases on medical thories, but on legal ones, because it is the legal principles that have to be applied to a resolution of the case. * * *"

It is quite inaccurate to state that compensation cases are not tried on medical theories. Many cases are of necessity tried upon medical theories because the facts do not lend themselves to demonstration. There is no legal theory which permits a tribunal to disregard the medical theories advanced by one side or the other. The duty of this court is to examine and weigh the evidence and determine on which side the evidence preponderates. *R. S.* 34:15–66 and *R. S.* 2:81–8.

In *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533, Mr. Justice Heher, speaking for the Supreme Court, epitomized the principle which should guide the courts in deciding cases under the Workmen's Compensation Act. He said: "The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, *i. e.,* based upon a preponderance of probabilities according to the common experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses."

Dr. Dias definitely stated that uveitis is always due to a constitutional cause and Dr. Berke's testimony heretofore quoted, that tests had been made for all of the producing causes of uveitis and that the tests had been negative, impliedly conceded that the cause of uveitis is usually constitutional. If it were otherwise, why would all of these tests have been made? Our independent examination of the medical authorities indicates that streptococcus viridans is a recognized cause of uvetitis. Dr. George E. de Schweinitz, a recognized authority in the field of ophthalmology, in his work entitled "Diseases of the Eye," writes:

"In general terms, the causes of uveitis may be septic or toxic. A certain number of cases depend upon so-called con-

stitutional diseases or disorders of nutrition—for example, chronic rheumatism, gout, arthritis deformans and diabetes; on disturbances of the internal secretion—hypothyroidism; on specific infectious diseases—influenza, syphilis, gonorrhea, tuberculosis, and specific fevers; on diseases of the blood—for instance, anemia; on auto-intoxications, particularly entero-genous auto-intoxication; on areas of sepsis (focal infections) in the pelvic region, urethra, bladder and prostate and semi-nal vesicles, the intestines, gall-bladder, appendix, the middle ears, the rhino-pharynx and accessory sinuses, gums (pyor-rhea alveolaris, tooth-root abscess), the tonsils, the pharyngeal ring, and the skin (furuncles).

"It may be said that non-suppurative inflammation of the uveal tract is often due to pyogenic organisms of diminished virulence, for example, staphylococcie, derived from the dis-tant foci of infection which have been harmed, and it has been attributed to pneumococcus and streptococcus * * *. In areas of dental infection the usual micro-organisms (sta-phylococci, etc.) are found as well as the streptococcus viridans."

So, too, Dr. Conrad Berens, also an authority in the same field states in his treatise on "The Eye and Its Diseases," that infected teeth are commonly believed to be responsible for focal reactions of the eye.

In light of the medical testimony adduced before the Com-pensation Bureau and in view of the opinions of the medical text-writers above mentioned, it does not appear to us that the hypothesis that the uveitis and consequent loss of vision of the petitioner's right eye was caused by the incident of April 23d, 1943, is "the more probable hypothesis." Rather does it appear to us that the more probable hypothesis is that the loss of vision is due to the disease which in turn was brought on by the streptococcus viridans infection.

The burden of proof not having been sustained by the petitioner below, the award of the Workmen's Compensation Bureau is reversed, with costs.